# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

ROBERT WAYNE HYDEN

              Plaintiff,

vs.

NANCY A. BERRYHILL,

              Defendant.

Case No. 3:15-CV-00095-REB

**MEMORANDUM DECISION AND ORDER**

This decision resolves Petitioner Robert Hyden's Petition for Review (Dkt. 1), which contests the Social Security Administration's final decision to deny him disability benefits.[1] The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

On December 4, 2009 Petitioner applied for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI"), alleging a disability onset date of January 31st, 2009. (Dkt. 1, p. 2 & AR 353). The claim was denied, both initially

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

and on reconsideration. Petitioner requested and obtained a hearing, held before Administrative Law Judge ("ALJ") RJ Payne on July 25, 2011. ALJ Payne issued an unfavorable decision, which was remanded by the Appeals Council. A second, post-remand hearing was held on October 17, 2013, with a follow up hearing on February 3, 2014. These hearings were also conducted by Judge Payne. (AR 41-70 & 101-120).

Dr. H.C. Alexander, a specialist in internal medicine and rheumatology, testified at the second hearing, as did Dr. Larry Kravitz, a psychologist. Vocational Expert K. Diane Kramer also testified, as did Petitioner. (*Id.*). Petitioner was assisted at the second hearing by a non-attorney representative. (AR 101).

On February 13, 2014, the ALJ issued his second decision. This decision also denied Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 20-35). Petitioner sought a second review from the Appeals Council, (15-19), but that was denied on December 9, 2014, (AR 9-14), thus making ALJ's decision the Commissioner's final decision.

In his petition before this Court, Petitioner contends the ALJ failed to give proper weight to the opinions of various medical providers, primarily those of Doris Ziegeldorf, a treating nurse practitioner. Petitioner also argues that the ALJ improperly weighed inconsistent opinions about the extent of Petitioner's functional limitations, which were obtained from several state medical consulting physicians. Finally, Petitioner argues that the ALJ failed to fully develop the record, and improperly arrived at an adverse credibility finding that was not supported by clear and convincing evidence. (Dkt. 17 p.

MEMORANDUM DECISION AND ORDER - 2

2).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance of evidence, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at

1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1989). The ALJ is also responsible for drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

#### A.     Sequential Process

In evaluating evidence, the ALJ must follow a sequential process in deciding whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to decide whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that the claimant had not engaged in SGA since December 31, 2009 the alleged date of onset of his disability. (AR 25).

The second step requires the ALJ to decide whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not

have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

In this case, the ALJ found that Mr. Hyden had these severe impairments: right wrist tendinitis, left knee low-grade chondromalacia, a history of migraine headaches, hypertension, and obesity. (AR 25). The ALJ also concluded that Mr. Hyden had non-severe psychological impairments, consisting of an adjustment disorder with mild anxiety and depression and some evidence of schizoid personality traits that did not cause more than minimal limitations in Petitioner's ability to perform basic work activities. (AR. 27).

The third step requires the ALJ to assess the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ concluded that Mr. Hyden's impairments, whether considered singly or in combination with his physical limitations, did not meet or equal a listed impairment. (AR 28).

The fourth step of the evaluation process requires the ALJ to decide whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's

residual functional capacity is his or her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established. The work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Mr. Hyden had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416967(b), with certain additional limitations: namely, that he could only sit for two hours at a time, for up to six hours in an eight hour workday. The ALJ also limited Petitioner to standing for thirty minutes at a time, for a total of four hours a day, and walking for twenty minutes at a time, for a total of three hours per day. The ALJ's residual functional capacity analysis also specified that Petitioner could lift and carry up to twenty pounds occasionally and ten pounds frequently. Due to Petitioner's knee and wrist impairments, the ALJ also imposed additional limitations on pushing and pulling with the upper extremities and on climbing, balancing, stooping, crouching and kneeling. (AR 29).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see*

*also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. The ALJ found, at step five, that Petitioner was not capable of performing his past relevant work, but that he was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (AR 33-34). Specifically, the ALJ found that with a light work classification subject to the additional restrictions discussed above, Petitioner would be capable of working as a parking lot attendant, electrical assembler, production assembler, a circuit board assembler, final assembler, and charge account clerk. (AR 34-35).

## B.    Analysis

The ALJ's assessment of the medical opinion evidence was influenced by his finding that the Petitioner was less than fully credible on the disabling extent of his physical impairments. Accordingly, the Court addresses the credibility issue first.

### 1.    The ALJ's Credibility Analysis.

"[W]here the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, [then] an adverse credibility finding must be based on "'clear and convincing reasons.'" *Carmickle v. Commissioner, Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008). Where the existence of an underlying impairment could produce the symptoms described, "an ALJ may find testimony not credible in part or in whole, [but]

he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Social Security Administration,* 466 F.3d 880 (9th Cir. 2006). Unless there is affirmative evidence of malingering in the record, an ALJ "may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Schow v. Astrue,* 272 Fed.Appx. 647, 651 (9th Cir. 2008). "General findings are not sufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue,* 622 F.3d. 1228, 1234 (9th Cir. 2010). In weighing credibility, the ALJ may consider the claimant's reputation for truthfulness or lying, inconsistencies in his testimony or between his testimony and his conduct or the medical records, the claimant's daily activities and work record, as well as testimony from third parties about the nature, severity, and effect of the symptoms about which he complains. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ gave numerous reasons for finding the Petitioner to be less than fully credible. A number of those reasons easily meet the applicable legal standards discussed above. In particular, the ALJ relied heavily on the relative paucity of medical records, which according to the ALJ "revealed very little evidence of any significant ongoing abnormality of the claimant's wrist or knee." (AR 31). Further, the medical evidence showed "complaints" of right wrist/hand and knee problems, but the ALJ noted that many of the physical examinations showed only symptoms of tenderness with palpation. He also noted that imaging studies were essentially normal, that claimant had

never been referred to a specialist, and that diagnostic studies confirmed only tendinitis in the wrist and low-grade chondromalacia in the knee. (*Id.*).

While ALJs may not base adverse credibility determinations *solely* on the lack of objective medical evidence to support the claimed symptoms, at the same time they are not required to turn a blind eye to a stark disconnect between a claimant's allegations at the hearing and the medical records. Lack of medical evidence may be a factor (albeit in combination with other factors) upon which ALJs can rely in performing their credibility analyses. *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005).

Here, ample additional reasons supported the ALJ's conclusion that Petitioner was less than fully credible. The Petitioner claimed disabling levels of pain in his wrist due to tendinitis, and medical records reflected statements from Petitioner describing his pain at 6-9 on a pain scale from 1 to 10.  (AR 59). However, Petitioner took only over-the-counter medications to treat this condition. (AR 31, 44, 87, 615). It is true that ALJ  must not draw any negative inference from an individual's failure to seek medical treatment without first considering any explanations that the individual may provide, such as poverty or lack of access to medical care, that may explain the failure to seek medical treatment. *See,* Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *7-8. However, the record demonstrates that Petitioner had access to medical care, in the form of a free clinic, even after his private job based health insurance expired. (AR 84, 442, 448, 606). Nor do the medical records indicate that anything more than conservative care was recommended for Petitioner's complaints. In such a context, the ALJ's decision that the

relatively conservative course of treatment undercut Petitioner's credibility comports with all applicable legal standards.

The ALJ also found that Petitioner's daily activities, specifically his extensive use of the computer and his online gaming activities, were consistent with an ability to perform light work, as modified by the ALJ's RFC analysis. Given that Petitioner's wrist pain was one of the primary impairments that allegedly impacted his ability to work, his online gaming activities were highly significant. The ALJ properly could conclude that participation in these activities was inconsistent with Petitioner's claim of disabling levels of pain in his wrists.

Finally, the ALJ also found that the history and timing of Plaintiff's treatment for various mental health difficulties also undercut his credibility. The ALJ focused upon an office visit to a psychiatric nurse practitioner, Deborah Blazzard, which took place in November of 2013, several weeks after the second hearing. During this visit, Petitioner reported that he had been hearing voices and felt sometimes as though he was "sliding into another dimension." (606-613). He also reported to Nurse Blazzard that he had heard voices as long as he could remember, but that they had worsened in the last six months. However, the ALJ pointed to an absence of any mention of such things in previous psychiatric work-ups or during the visits to the medical providers who treated his physical symptoms. (AR 32). Further, earlier mental health evaluations from 2009 and 2010 found no reason to suggest that Petitioner's mental health symptoms were an impediment to holding down a job. Specifically, Dr. Khurana, who evaluated Petitioner in

2009, was unable to arrive at any definitive mental health diagnosis, did not recommend

any treatment, and concluded Petitioner was "clear to go back to work." (AR 522). In an

evaluation of Petitioner in May of 2010, another psychologist, Dr. Emery, concluded:

> [T]here is no serious mental illness. There is some reactive
> depression stimulated by his loss of work, medical issues, and
> upcoming move, and he is isolated and asocial, likely a
> function of schizoid personality given his social awkwardness
> and difficulty with interpersonal pressure. Social functioning
> is compromised accordingly, but he seems to have functioned
> adequately operating a machine in a manufacturing setting
> while he had the physical therapy. General adaptation is
> therefore limited to impersonal predictable circumstances. I'd
> estimate cognitive skills to be above average."

(AR 472).

Where neither of these previous mental health work-ups had diagnosed serious

mental illness or memorialized anything of the nature that Petitioner described to the

psychiatric nurse *after* the second hearing, the ALJ properly could conclude that

Petitioner's claim to have experienced a sudden onset of more serious psychiatric

symptoms was less than fully credible. Taken as a whole, the ALJ's reasons comport with

the legal standards requiring that an adverse credibility determination be based on clear

and convincing evidence.

### 2.    The ALJ's Assessment of the Medical Opinion Evidence

The Court next considers Petitioner's arguments that the ALJ erred in evaluating

the medical opinion evidence. Here too, the Court concludes that the ALJ's treatment of

such evidence was consistent with all applicable legal standards and supported by

substantial evidence in the record. Petitioner's arguments to the contrary are twofold. One, he argues that the ALJ failed to adequately consider the opinions of treating nurse practitioner, Doris Ziegeldorf. Second, he argues that the ALJ erred by giving significant weight to several other opinions from various state consulting physicians, without addressing what Petitioner contends are inconsistencies between those opinions.

### a.    Summary of Opinion Evidence

The four primary RFC opinions addressing physical limitations were those of Nurse Ziegeldorf, the treating nurse practitioner, and three state consultants who reviewed records but did not treat Petitioner – specifically, Dr. Lloyd Schneiderman, Dr. HC Alexander, and Dr. Adam Husney. Nurse Ziegeldorf opined that Petitioner could lift up to ten pounds frequently and 11 to 50 pounds only occasionally. She believed that Petitioner would be limited to three hours of intermittent sitting, standing, and walking, and could only work a total of three hours per day. (AR 534). In an earlier opinion dated May 28, 2009, Ms. Ziegeldorf also placed restrictions on repetitive prolonged awkward posturing and forceful grasping, due to the right wrist tendinitis. (AR. 526).

Dr. Schniederman placed similar restrictions on lifting and carrying (up to ten pounds frequently and up to 20 pounds occasionally), but opined that Petitioner could sit, stand, and walk for much longer periods of time–about six hours out of an eight hour day. (AR 589). Dr. Alexander, another state consultant who testified at the hearing, agreed that Petitioner could lift, carry, push and pull ten pounds frequently and 20 pounds occasionally. (AR 107). He also opined that while that there would be no restrictions on

sitting, Petitioner's knee pain would limited standing to four hours in an eight hour work day, about 30 minutes at a time. (*Id.*). As to walking, Dr. Alexander said Petitioner could walk about 20 minutes at a time, for a total of three hours a day. Further, he said that when considered in combination, Petitioner would be capable of engaging in walking/standing activities for a total of *seven* hours a day. (AR 108). Dr. Alexander also opined that due to tendinitis, Petitioner would be limited to only occasional grasping, handling, and fingering with his right hand and wrist. (AR 109).

Finally, Dr. Husney, whose opinion the ALJ did not explicitly consider, offered opinions largely consistent with those of the other doctors, but stated that Petitioner's lifting and carrying capabilities would be limited to ten pounds, and that only occasionally. (AR 545).

### b.  The ALJ's RFC Analysis and Resolution of Conflicts in the Evidence

After considering the opinion evidence and the other evidence available in the record, the ALJ arrived at the following conclusions with respect to Petitioner's RFC. First, the ALJ concluded that the claimant could sit two hours at a time, up to six hours a day, and that he could stand for 30 minutes at a time, up to four hours a day. Walking was limited to 20 minutes at a time, for three hours out of an eight-hour workday. The ALJ limited lifting weights of up to 20 pounds to "occasionally" but indicated that Petitioner could lift up to ten pounds frequently. The ALJ also found that Petitioner was not able to frequently push or pull controls or handles with his right arm, but could grasp and handle with the right hand frequently.

Overall, the RFC was consistent with the opinion evidence in the record. The opinions of the various state consultants were not identical in every detail, and the ALJ did not always specifically say why he was not adopting particular aspects of these doctors' opinions. (For example, with respect to the ability to lift weights larger than 20 pounds or to grasp and handle only occasionally.) Nevertheless, when one reads the ALJ's decision as a whole, his reasoning is sufficiently clear and plainly represents an entirely appropriate synthesis of the sometimes conflicting evidence. Further, the conflicts emphasized by the Petitioner were not pervasive, and any materiality they might have had in the RFC determination were adequately addressed by the overall approach taken by the ALJ.

By example, both Dr. Husney and Alexander opined that Mr. Hyden would be limited to only occasional gripping and handling, as opposed to the frequent handling and gripping abilities identified in the ALJ's RFC. The ALJ's reasons for not adopting that specific opinion (which would, Petitioner argues, have led to a finding of disability) are evident from the record. Petitioner argues, essentially, that the ALJ failed to explain why he chose not to adopt the more restrictive medical opinion evidence on grasping and handling abilities. But, as previously recounted herein, the ALJ had found Petitioner not credible as to his level of wrist pain given his extensive and extended computer usage. Although the Court is not required to guess at what the ALJ may have been thinking, or to engage in post hoc rationalization exercises, *Bray v. Commissioner of Social Security,* 554 F.3d 1219, 1225 (9th Cir. 2009), this case does not involve vagueness in an ALJ's

decisions. Even if not separately addressed in the recitation of his ultimate RFC

conclusions, the rationale for why Dr. Alexander's opinions as to Petitioner's grasping

and handling ability were not incorporated into those conclusions are sufficiently evident

when reading the ALJ's opinion as a whole.

With respect to the ability to lift (of particular importance, given Petitioner's wrist

tendinitis) the opinions of Dr. Schiederman, Dr. Alexander, and Nurse Ziegledorf were all

consistent, and reflected in the ALJ's RFC analysis. Only Dr. Husney imposed greater

restrictions on lifting.  Though the ALJ did not explicitly discuss Dr. Husney's opinions

or give any reasons for rejecting any aspect of those opinions, any error associated with

this oversight was harmless when several number of the jobs identified by the VE and the

ALJ were sedentary jobs that did not require the ability to exert the greater amounts of

force identified in the ALJ's ultimate RFC analysis. See DOT 726.684-110, available at

1991 WL 679616 (print circuit board assembler); DOT 713.687-018, available at 1991

WL 679271 (final assembler); DOT 205.367-014, available at 1991 WL 671715 (charge

account clerk). The Commissioner is thus correct that Petitioner could do several of the

jobs the VE identified, even if Dr. Husney's lifting and carrying restrictions had been

incorporated into the ALJ's RFC assessment. The Court also concludes that the Petitioner

has not identified any meaningful difference between the ALJ's ultimate RFC analysis

and those of the various state consulting physicians with respect to limitations on

balancing, bending, stooping, crouching and climbing, or with respect to environmental

limitations.

### c.   Nurse Ziegeldorf

Petitioner contends that the ALJ's treatment of Nurse Ziegeldorf's opinions requires a remand. The ALJ decided to give no weight to these opinions in part because Ms. Ziegeldorf was not an acceptable medical source but also because she did not "provide any specificity as to the degree of limitation or limitations that would preclude the claimant from all types of work activity."

At the time the ALJ issued his decision, the evaluation of medical opinion evidence was governed by the following standards. The opinions of treating physicians were entitled to a high level of deference, and could only be rejected for clear and convincing reasons. However, a different standard governed the opinions of nurse practitioners, physician's assistants, physical therapists, and the like, who were not considered "acceptable medical sources" and whose opinions were therefore not entitled to controlling weight under the "treating physician" rule. See 20 C.F.R. §§ 404.1513(a) (1–5), 416. 913(a)(1–5). *See also, Hudson v. Astrue,* 2012 WL 5328786 N. 4 (E.D. Washington 2013). Nor could the opinion of a provider who was not an "acceptable medical source" be used to establish the existence of an impairment. Social Security Rule 06-03p (rescinded).

At the same time, SSR 06-03p still directed that the opinions of such providers were nonetheless "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* Thus, ALJs could not  reject the opinions of such providers entirely without comment, but

instead had to "give reasons germane to each witness for doing so." *Molina v. Astrue, 674 F.3d 1104, 1111 (9ᵗʰ Cir. 2012).*

The Commissioner agrees that the ALJ erred by finding that Ms. Ziegeldorf's opinions lacked specificity but nevertheless argues that this error was harmless because 1) Ms. Ziegeldorf was not an acceptable medical source; and 2) the ALJ was plainly relying on the opinions of the state consulting physicians who had reached different conclusions as to Petitioner's limitations.

The Court, however, is not persuaded in the first instance that the ALJ erred in his assessment of Ms. Ziegeldorf's opinions. As is evident from the record, the forms Ms. Ziegeldorf filled out to convey her opinions are similar to those used by the state consulting physicians in terms of the level of detail offered. Ms. Ziegeldorf completed two such forms, which contained various questions about functional limitations, including lifting, carrying, and the ability to stand, walk and sit. (AR 526, 534). The forms also provided places for additional supportive details or narrative, which she provided. Ms. Ziegeldorf's opinions, therefore, were not of the cursory type sometimes seen in which a provider states without detail as to why, that "the claimant is disabled."

The ALJ's comments on the specificity of Ms. Ziegeldorf's opinions, however, should not be analyzed in a vacuum; rather, they should be viewed in light of the primary differences between her opinions and those of the consulting doctors. As described *supra*, Ms. Ziegeldorf's opinions were consistent with those of the consulting doctors in many key respects, particularly with respect to lifting restrictions and the need to avoid

repetitive motions with the right wrist. Where she differed with the consulting doctors was in her opinions about the length of time Petitioner could sit, stand, and walk, and as to the total amount of time he could work in a day – in other words, on the ultimate conclusion as to whether or not Petitioner was disabled.

At the hearing, the ALJ questioned Dr. Alexander extensively as to these very issues, and adopted Dr. Alexander's assessment, which differed somewhat from that of Ms. Ziegeldorf. (AR 107-108). When questioned by the ALJ, Dr. Alexander said that when the standing and walking capabilities were added together, rather than considered separately, they added up to seven hours out of an eight hour day. (AR 108). In other words, under questioning from the ALJ, Dr. Alexander testified to a different and more nuanced opinion upon the crucial issues of sitting, standing and walking than did Ms. Ziegeldorf.  In contrast, Ms. Ziegeldorf did not address or otherwise opine upon the ability of Petitioner to change positions being able to extend the amount of time that Petitioner could work in any given day, even if he could not *continuously* sit (only), stand (only), or walk (only) for the entire day. Against that template, which the ALJ could properly conclude was a sensible assessment of Petitioner's circumstances, there is in no error in the ALJ's ultimate adoption of Dr. Alexander's RFC analysis as to sitting, walking and standing, nor in the ALJ's comment that Ms. Ziegeldorf's opinions failed to provide specific reasons as to why claimant would be precluded from all types of work activity.  Accordingly, there is also a "germane reason" for rejecting her opinion,

consistent with applicable legal standards.[2]

### d.    Dr. Beezy

Next, Petitioner argues that the ALJ erred by failing to address the opinions of Dr.

Reuben Beezy, a consulting physician who testified at the first hearing in July of 2011.

Given that Dr. Beezy testified that he agreed with the RFC analysis of Dr. Schneiderman,

whose opinions the ALJ did address, the ALJ's decision not to specifically discuss Dr.

Beezy's opinions does not undermine his decision or constitute a basis for reversal. And

while Petitioner also argues that Dr. Beezy discussed possible asthma and hypothyrodism

that the ALJ failed to address, Petitioner does not argue that there was any medical

evidence suggesting that these impairments should have been considered as severe

impairments at Step Two. Nor does he argue that these impairments would have resulted

in additional functional limitations.

---

[2] Though the parties did not bring the matter to the Court's attention, the Court notes that in January 18, 2017, the Commissioner issued new rules that work substantial changes to the way ALJs must evaluate medical opinion evidence going forward. Among other things, these changes eliminate the traditional scheme of deference to treating physicians, and instead require that all opinion evidence be evaluated on a more equal footing, with a focus on issues such as the supportability of those opinions and consistency with the overall record. See 82 Federal Register 5844-01, 2017 WL 168819. The new rules also allow certain types of providers–among them nurse practitioners and physicians' assistants–to be considered as acceptable medical sources along with medical doctors. However, those particular changes apply only to new claims filed on or after March 27, 2017 and are thus of no relevance here. 20 C.F.R. § 404.1520(c). Further, given that the new rules no longer require ALJs to defer to treating providers of any kind, it is unlikely that the new rules would result in a finding of disability even if they were applicable.. The Commissioner also rescinded former SSR 96-03p and incorporated the principles contained in that ruling into a revised regulation found at 20 C.F.R.404.1527(f) and 416.927(f). These changes are applicable to claims *currently* in the system as of March 27, 2017, but since the primary effect of the changes was to codify the old SSR 96-03p, they make no difference to the outcome of this case.

### 3.    Development of the Record and Expression of Nonexertional RFC Limitations

Petitioner argues that the ALJ should have obtained certain medical records from Valley Medical Center regarding wrist pain that dated from August 2008 to January of 2009. These medical records were not made part of the administrative record, but they were extensively summarized in Dr. Rodde Cox's IME report. (AR 416-419). They also appear to predate the alleged disability onset date of December 31, 2009. Accordingly, the ALJ did not err by failing to obtain these records and consider them in his decision.

Petitioner then argues that the ALJ erred by neglecting to put the non-exertional limitations of his RFC analysis into vocational terms. Petitioner takes specific issue with a single sentence in the RFC analysis, in which the ALJ stated, "the claimant also takes over-the-counter (OTC) and recently prescribed medications for pain and/or other needs but is still able to be reasonably attentive and respective in a work setting and able to carry out normal tasks satisfactorily." (AR 29).[3]

Even though nonexertional and exertional limitations are to be expressed in terms of a claimant's ability to perform specific work-related tasks, the ALJ's statement was not impermissibly vague. First, nonexertional limitations can include any work-related limitations that do not depend on an individual's strength, such as postural, manipulative, communicative, and mental capacities, most of which the ALJ's RFC analysis addressed

---

[3] The parties agree, however, that the word "respective" was a typographical error and that the ALJ meant to say that Petitioner had the ability to be reasonably "responsive" in a work setting.

in detail.[4] *See, e.g. Biddell v. Colvin,* 2016 WL 81530 (W.D. N.Carolina 2016).  Petitioner contends that the sentence quoted above evidences that the ALJ addressed his mental capacities only in a brief, cursory fashion. However, given that the doctors who examined Petitioner found that his mental health issues did not present any appreciable interference with his ability to work, the ALJ's RFC analysis was adequate.

## IV.  ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **DENIED,** the decision of the Commissioner is **AFFIRMED,** and this action is **DISMISSED** in its entirety, with prejudice.

DATED: **May 10, 2017**

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

---

[4] For example, the ALJ found that Petitioner could not climb ropes, ladders or scaffolds and should not work around unprotected heights, or around moving machinery with rapidly moving parts. (AR 29).